**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

DWAYNE TYLER,

    Plaintiff,                                    CASE #

v.

INTEGRATED HABILITATION
SERVICES, INC., EM2 AFFILIATES LLC
and ELLA MAYO

    Defendants.
_____/

**COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT &**
**DEMAND FOR JURY TRIAL**

Plaintiff, DWAYNE TYLER, by and through the undersigned counsel, herein files this Complaint and sues the Defendants, INTEGRATED HABILITATION SERVICES, INC., EM2 AFFILIATES LLC and ELLA MAYO pursuant to 29 U.S.C. Section 201 *et seq.* of the Fair Labor Standards Act, and states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, DWAYNE TYLER, brings this action for violation of federal wage and hour laws pursuant to the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.,* (the "FLSA"). Plaintiff alleges that he is entitled to unpaid overtime wages and suffered unlawful retaliation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. Section 201 et seq.

2. The FLSA is our nation's foremost wage law. The overtime requirements of the FLSA were meant to assure workers additional pay to compensate them for the burden of a work week beyond the hours fixed in the act. *See In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. N.Y. 2010). It requires minimum wage and overtime pay for certain non-exempt employees. 29 U.S.C. § 213.

3. Throughout Plaintiff's employment with the Defendants, his joint employers, he was required to work in excess of forty (40) hours per week and did so.

4. Pursuant to policy and scheme to avoid paying Plaintiff overtime premiums as mandated by the FLSA, Defendants failed to pay Plaintiff a premium for all hours worked in excess of forty (40) in a workweek as required by 29 U.S.C. Section 207(a)(1).

5. Within days of learning Plaintiff had contacted the Department of Labor concerning his unpaid overtime, Defendants terminated his employment in response.

6. The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion. Plaintiff reserves all rights to plead in the alternative.

## PARTIES, JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. Section 1331, because this action involves a Federal Statute, 29 U.S.C. Section 201, et seq.

8. This Court has personal jurisdiction over the Defendants in this action because the Defendants operate substantial business in Miami-Dade County, Florida and the damages at issue occurred in Miami-Dade County, Florida.

9. Venue is proper to this Court pursuant to 28 U.S.C. Section 1391(b) since the acts complained of herein took place in this District.

10. At all times relevant to this action, Plaintiff was an employee of Defendants within the meaning of 29 U.S.C. Section 203(e)(1).

11. Defendant, INTEGRATED HABILITATION SERVICES, INC., (Integrated) is a Florida Profit Corporation with a principal address of 305 SOUTH FLAGLER AVENUE, HOMESTEAD, FL 33030. Defendant Integrated may be served through its registered agent Ella

Mayo at 305 SOUTH FLAGLER AVENUE, HOMESTEAD, FL 33030.

12. Defendant EM2 AFFILIATES LLC (EM2) is a Florida Limited Liability Company with a principal address of 244 NW 22ND ST, HOMESTEAD, FL 33030. Defendant EM2 may be served through its registered agent Ella Mayo at 244 NW 22ND ST, HOMESTEAD, FL 33030.

13. Defendant Ella Mayo (Mayo) is the President and Registered Agent of Defendants Integrated and EM2. (Mayo, collectively with Integrated and EM2, Defendants).

14. Mayo may be served at her home located at 605 SW 4TH ST, HOMESTEAD, FL 33030-6911.

15. Mayo, upon information and belief, managed the day-to-day operations of both Integrated and EM2 and created the unlawful pay scheme complained of herein.

16. Defendants engage in interstate commerce under the definition of the FLSA and upon information and belief, individually and combined have annual gross revenues of more than $500,000.00 over the past three years and are subject to enterprise coverage under the FLSA.

17. Additionally, during Plaintiff's employment with Defendants' he was employed by an establishment engaged in the care of mentally ill patients.

18. At the direction of Mayo, Integrated and EM2 commingled funds, shared policies, procedures, and pay practices such that they are essentially the alter-ego of each other, a single business enterprise and joint employers.

19. At all times material, Plaintiff performed work for Defendants jointly and was subject to a single set of company policies and procedures. Further, his work was directed by managers/officers who concurrently and simultaneously manage the businesses and directed his work.

20. Thus, Defendants are employers as defined by the FLSA and are joint employers

of the Plaintiff.

## FACTUAL BACKGROUND

21. Plaintiff was employed by the Defendants, jointly, as a Caretaker from approximately November 23, 2019 until his termination on July 27, 2021.

22. At the direction of Mayo, Integrated and EM2 commingled funds, shared policies, procedures, and pay practices such that they are essentially the alter-ego of each other, a single business enterprise and joint employers.

23. Plaintiff's primary duties were to assist Defendants' clients with mental conditions with their hygiene, feeding, bathing and other life activities. Plaintiff performed his job duties at both Integrated and EM2 on a daily basis.

24. All of Plaintiff's job duties were routine and standardized, according to set procedures created by Defendants, or under the supervision of Defendants, and specifically Mayo.

25. Plaintiff routinely worked hours in excess of 40 per week throughout his employment as a Caretaker.

26. Defendants paid Plaintiff on an hourly basis.

27. Regardless of who he was allegedly working for, Plaintiff performed all of his job duties in the same manner and form, performed them at the same location, and clocked in and out using the same machine and even the same personal identification number.

28. The only difference between these two jobs was that once Plaintiff reached 40 hours per week working for Integrated, his hours over 40 were then attributed to working for EM2.

29. Plaintiff never applied to work for Defendant EM2.

30. Despite regularly working in excess of 40 hours per week during his employment with Defendants, Plaintiff was not paid all of his overtime compensation, as Defendants did not pay him the half time premium owed for all hours worked in excess of forty (40) in a workweek

as required by 29 U.S.C. Section 207(a)(1).

31.     Upon information and belief, Defendants intentionally misclassified Plaintiff as an employee of EM2 to prevent Plaintiff from working 40 hours in one week and thus evade paying him his rightful overtime compensation.

32.     Defendants controlled the manner in which Plaintiff was to perform his work, Plaintiff did not have any opportunity for profit or loss depending on his managerial skill, Plaintiff made no investment in equipment or materials required for his work, Plaintiff's services rendered did not require special skills, and Defendants were Plaintiff's sole source of income during his employment with Defendants.

33.     The services performed by Plaintiff were essential, necessary and an integral part of the business conducted by Defendants.

34.     Plaintiff's job position was subject to the FLSA wage provisions.

35.     Plaintiff complained on multiple occasions to Defendants concerning their unlawful pay practices, however, these complaints were ignored.

36.     Under the belief that the Equal Employment Opportunity Commission (EEOC) was the correct agency, Plaintiff contacted the EEOC with his complaint of Defendants' unlawful pay practices.

37.     In turn, the EEOC directed Plaintiff to the Department of Labor (DoL) who Plaintiff contacted and then made his complaint to the DoL concerning the Defendants' unlawful pay practices.

38.     In a phone conversation on or about July 22, 2021 between Plaintiff and Mayo, Plaintiff informed Mayo that he had contacted the EEOC and the DoL concerning Defendants' unlawful pay practices.

39.     On July 27, 2021, in an in-person meeting, Mayo terminated Plaintiff's

employment with no reason given as to why he was being terminated.

40. Throughout his employment with Defendants, Plaintiff had not been written up nor received any disciplinary action.

## COUNT I
## Failure to Pay Overtime Compensation in Violation of the FLSA
## 29 U.S.C. § 201, *et seq.*

41. Plaintiff adopts and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

42. Plaintiff was an employee of Defendants within the meaning of 29 U.S.C. Section 203(e)(1).

43. The Defendants are Plaintiff's "employer" within the meaning of 29 U.S.C. Section 203(d).

44. The overtime wage provision set forth in FLSA Section 207 applies to Defendants as it has engaged in commerce under the definition of the FLSA and has revenues greater than $500,000 annually.

45. Throughout Plaintiff's employment as a Caretaker for Defendants, he was not paid all overtime compensation (premiums) for the hours worked in excess of forty (40) per week.

46. Plaintiff did not exercise the requisite discretion, management, and independent judgment with respect to matters of significance to be classified as exempt under the FLSA.

47. Plaintiff did not have disciplinary authority or discretion and was not involved in the hiring and firing of employees.

48. Plaintiff's primary job duties did not require the exercise of independent discretion and judgment in matters of significance.

49. Plaintiff did not make decisions as an exempt administrator would, nor did he create any policy.

50. Plaintiff did not "manage" a department or manage other employees.

51. Defendants are aware or should have been aware of the FLSA overtime rate calculations, its provisions and exemptions, and know, or should have known, that withholding overtime wages from Plaintiff constituted a willful violation of the FLSA.

52. Defendants knew that since Plaintiff did not have decision making authority and discretion, and did not interview, hire, fire or have discretion to discipline employees that he was a non-exempt employee and should have been paid overtime wages.

53. Instead, Plaintiff attributed the first 40 hours he worked per week to Integrated and attributed all hours worked over 40 per week to EM2, despite the fact that he was performing the same duties and at the same location throughout his employment with Defendants.

54. Defendants have thus willfully and intentionally engaged in a pattern and practice of violating the overtime provisions of the FLSA by refusing to pay overtime wages to Plaintiff for all hours worked in excess of forty (40) per week.

55. During the relevant time period, Defendants required Plaintiff, an employee under the FLSA, to regularly work in excess of forty (40) hours in a work week without payment of overtime premiums. Defendants were aware Plaintiff was working over 40 hours routinely to perform his job duties.

56. Defendants knowingly and willingly failed to pay Plaintiff proper overtime wages at a rate of time and one half the regular rate of pay, or alternatively a half time premium of his regular rate of pay for all such hours, for the purposes of decreasing labor costs and maximizing profitability.

57. Evidence reflecting the precise number of overtime hours worked by Plaintiff is in the possession of Defendants in some manner or form. If these records are unavailable, Plaintiff may establish the hours he worked solely by his testimony and the burden of overcoming such

testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

58. As a direct result of Defendants' violations of the FLSA, Plaintiff suffered damages by being denied overtime wages in accordance with Sections 207 and 216(b) of the FLSA.

59. Defendants have not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

## COUNT II
## UNLAWFUL RETALIATION IN VIOLATION OF THE FLSA SECTION 15a3

60. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1-40 as if fully set forth herein.

61. Plaintiff contacted both the EEOC and the DoL to complain of Defendants' unlawful pay practices that were in violation of the FLSA, actions of which are protected activity.

62. In a phone conversation on or about July 22, 2021 between Plaintiff and Mayo, Plaintiff informed Mayo that he had contacted the EEOC and the DoL concerning Defendants' unlawful pay practices.

63. On July 27, 2021, during an in-person meeting, Mayo terminated Plaintiff's employment with no reason given as to why he was being terminated.

64. Prior to being terminated, Plaintiff had not been on any performance improvement plan or warned of being fired for job performance.

65. Defendants willfully, and maliciously retaliated against Plaintiff approximately five days after learning that Plaintiff had presented his claim for overtime wages to the EEOC and the DoL. Thus, Defendants are in violation of the anti-retaliation section of the FLSA, 15a3.

66. Plaintiff has suffered loss of income, mental anguish and humiliation and other related costs as a result of his loss of income due to Defendants termination of Plaintiff's employment and refusal to compensate him further.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dwayne Tyler demands judgment against Defendants including the following relief:

    a.    A judgment finding that Defendants willfully and in bad faith violated the overtime compensation provisions of the FLSA;

    b.    That the Court award Plaintiff Tyler overtime compensation and a premium for all the previous hours worked over forty (40) hours in any work week in which he did not receive a premium for all overtime hours worked during the past three (3) years, AND award payment of liquidated damages of an equal amount of the awarded overtime wages; in addition to penalties and interest on said award pursuant to §216 of the FLSA;

    c.    Payment of his attorneys' fees and costs pursuant to § 216 of the FLSA for all causes of action; and,

    d.    Payment of back pay from the date of termination of Plaintiff's employment until the date of judgment or jury verdict, plus front pay in lieu of reinstatement in amounts to be determined by the jury and double the sums owed as liquidated damages;

    e.    Compensatory damages for retaliatory discharge and termination of Plaintiff's employment;

    f.    That the Court award any other legal and equitable relief as this Court may deem appropriate, including barring any retro-active applications of exemptions and estoppel of affirmative defenses.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated August 1, 2022.

        Respectfully submitted by,

        */s/Mitchell Feldman.*
        Mitchell Feldman, Esq.
        FB #0080349
        **Feldman Legal Group**
        6916 W. Linebaugh Ave #101

>Tampa, FL 33625
>mfeldman@flandgatrialattorneys.com
>tel 813 639-9366, fax: 813 639-9376
>*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by the CM/ECF system on all counsel or parties of record.

>*/s/Mitchell L. Feldman*
>**Mitchell L. Feldman, Esquire**